[L. A. No. 5722. Department Two.—November 20, 1918.]

In the Matter of the Estate of FRANCISCO PALOMARES, Deceased.

ADOPTION—ILLEGITIMATE CHILD—SECTION 230, CIVIL CODE.—Section 230 of the Civil Code, providing for the adoption of an illegitimate child, not being retroactive, does not apply to a case the facts of which occurred prior to it going into effect in 1873.

ID.—METHODS OF ADOPTION.—Prior to March 31, 1870, the adoption of an illegitimate child could only be accomplished by the acknowledgment of the child before a witness by a written instrument, and from March 31, 1870, to January 1, 1873, such adoption might be by a writing or by receiving, treating, or publicly acknowledging such child as the offspring of the adopting parent.

APPEAL from an order of the Superior Court of Los Angeles County denying a petition for letters of administration. James C. Rives, Judge. Affirmed.

The facts are stated in the opinion of the court.

Willedd Andrews, for Appellant.

Robert A. Todd, for Respondent.

MELVIN, J.—Appellant, Francisca Palomares de Alvarado, petitioned for letters of administration in the estate of Francisco Palomares, deceased, alleging that he had died in 1882, leaving estate in the county of Los Angeles, and that she was an illegitimate child of said Francisco Palomares, adopted by him in compliance with the provisions of section 230 of the Civil Code. The petition was dated March 9, 1917. Porfirio R. Palomares, a son of Francisco, filed opposition to the appointment of petitioner, denying the aver-

ments regarding her paternity and adoption, and alleging
that by probate proceedings instituted shortly after his
father's death all of the property of the estate, amounting to
less than one thousand five hundred dollars, had been as-
signed to the minor children whose right to it had been un-
questioned for many years. There was also a request from
certain persons, as heirs of Francisco Palomares, deceased,
that Porfirio Palomares be appointed administrator of the
estate. All of the matters of dispute between the contesting
claimants were duly tried and the court found that Fran-
cisca Palomares de Alvarado was not a child of Francisco
Palomares and not a party in interest; that Porfirio was a
child and a party in interest; but that there was no property
in the estate. Accordingly both petitions for letters of ad-
ministration were denied. From that order Francisca Palo-
mares de Alvarado has appealed.

Mrs. Alvarado testified that she was born in 1862 in San
Jose, now known as Pomona. She introduced in evidence a
certified copy of an entry in the baptismal register of the
Catholic church at San Bernardino reciting that on the
seventh day of January, 1862, Francisca, daughter of Fran-
cisco Palomares and Tonsoja Valdez had been baptized and
that Luis Palomares and Josefa Palomares were the sponsors.
She further stated that she did not remember meeting Fran-
cisco Palomares until she was eight or nine years old. She
said that she knew of Mr. Palomares sending money on sev-
eral occasions to aid in her education; that he had given her
various small sums and had called her "daughter." At
that time Mr. Palomares had married and the mother of
Francisca had become the wife of Mr. Ruiz. Mrs. Alvarado
testified that she never visited the house of the Palomares
family after the marriage of Mr. Palomares, and that she had
no recollection of ever being at the home of his parents,
where, as shown by the testimony of other witnesses, he lived
prior to his marriage. She stated that she had always been
known by the name of Francisca Palomares until she married
Mr. Alvarado. During the years when she was attending
school she lived with her mother and her stepfather. She
also told of an occasion when Mr. Palomares introduced her
as his daughter to a Mr. Soto. Jesus Rivera testified that
Francisco Palomares acknowledged Francisca as his daugh-
ter, and on several occasions sent small sums of money for

her by Rivera, who was then a boy. An old man, named Pasqual Rubidoux, testified substantially to the same effect. A. Rubidoux, a brother of the other witness, stated on the witness-stand that Francisco Palomares acknowledged Francisca as his daughter, and that in 1864 or 1865, when Francisco was unmarried and living with his parents, he used to send witness to get the little girl and bring her to the ranch where he lived. On such occasions the child would sometimes be kept over night. Felicidad de Ruiz, mother of Mrs. Alvarado, testified that Francisco Palomares was the father of the child Francisca; that witness had caused the little one to be baptized as Francisca Palomares (the putative father not being present at the ceremony); that Mr. Palomares had sent various small sums of money for the use of the little girl while she was at school; that Francisco Palomares had often acknowledged the girl as his child; and that before his marriage he used to send for the child to be brought to the home of his parents, where he lived. Asked how many times Francisca was there, she said "probably two or three times," and regarding the length of the visits she testified that the little girl sometimes, stayed all day and sometimes she would remain overnight.

The foregoing was substantially all the showing in favor of acknowledgment and adoption, and in contradiction thereof there was counter testimony that when the child registered at the public school under the name of Palomares, the reputed father, on being informed of such registry, denied that she was his child. It was in testimony that on other occasions he made similar denials, and neighbors and intimate friends testified that they never knew of the little girl being at the home of Francisco Palomares' parents. But even without this testimony in contradiction of that offered on behalf of Mrs. Alvarado there was a failure to establish the essential element of adoption in accordance with section 230 of the Civil Code, even if that statute were applicable; but the code section has absolutely no force or effect in this belated proceeding, for the reason that substantially all of the supposed acts of adoption occurred before there was a section 230 of the Civil Code, or, indeed, any code at all. All of the alleged occasions of receiving the child into the family of Francisco Palomares were before the year 1870, and section 230 of the Civil Code went into effect in 1873.

That section is not retroactive.    (*Estate of Pico*, 52 Cal. 84.)
The history of the section was reviewed in *Estate of Jessup*,
81 Cal. 408–420, [6 L. R. A. 594, 21 Pac. 976, 22 Pac. 742].
In that opinion the previous statutes were also cited and the
court indicated the facts that prior to March 31, 1870, the
adoption of an illegitimate child could only be accomplished
by the acknowledgment of the child before a witness by a
written instrument; and that from March 31, 1870, to January
1, 1873, such adoption might be by a writing or by re-
ceiving, treating or publicly acknowledging such child as the
offspring of the adopting parent.    The acts of Palomares be-
fore 1873 utterly failed to measure up to the terms of either
of the statutes in effect prior to that year.

It follows that the court properly held that there was no
adoption of the child Francisca by Mr. Palomares.

Since the finding that Mrs. Alvarado was not a party in
interest, because never adopted by Francisco Palomares, must
stand, it is not necessary for this court to review the testi-
mony offered upon the other issues.    Not being an heir, she
is not interested in the condition of the estate nor the amount
of property, if any, subject to administration.

The order is affirmed.

Wilbur, J., and Lorigan, J., concurred.

Hearing in Bank denied.